Titone and Hancock, Jr., JJ.
(dissenting). While on duty, petitioner police officer slipped in a wet spot on the bathroom floor and injured herself. By the majority’s holding, she is denied reimbursement for her medical expenses under Administrative Code of the City of New York § 12-127 (b) because she was guilty of "fault or misconduct”. She should have seen the wet spot, the majority holds, and was in some way contributorily negligent. Thus, she receives no recompense.
Could the Legislature possibly have intended an interpretation of the words "fault or misconduct” which makes contributory negligence — any negligence, no matter how slight — a basis for denying to firefighters and police officers injured in the line-of-duty relief under a statute which was obviously enacted for their benefit? One searches in vain for a reason why the Legislature might have intended such a harsh construction, a result which unfairly burdens members of the police and fire departments and is contrary to the evident purpose of the legislation.
The result seems all the more unfair when it is realized *1002 that members of the police and fire departments have always been excluded from workers’ compensation coverage which, if it applied, would protect them even if they were negligent. Ironically, the very reason for their exclusion from workers’ compensation was that they were already covered for line-of-duty injuries under the Administrative Code (see, Matter of Ryan v City of New York, 228 NY 16, 20). But the majority now holds that contributory negligence is an absolute bar under section 12-127 (b). It is inconceivable that the Legislature could have intended a statutory scheme for on-the-job injuries in which almost every employee in the State — except for members of police and fire departments — would be compensated for injuries regardless of their negligence. The majority suggests no reason why the Legislature would have envisioned such a punitive construction. If followed, this construction would deny medical reimbursement to deserving firefighters and police officers injured on the job if, as will be true in most cases, they have contributed to the cause of their own injuries, at least in some minor degree — for example, to a firefighter who slips on a wet sidewalk while dragging a fire hose, or to a police officer who trips on a curb while pursuing a suspect.
The majority holds that by reading the Code’s "plain meaning” (majority mem, at 1000) it must equate "fault or misconduct” with "simple negligence”. But it clearly need not do so. Under the doctrine of noscitur a sociis, "the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it” (McKinney’s Cons Laws of NY, Book 1, Statutes § 239). Here, the word "fault” is associated with the word "misconduct” and can be interpreted as mandating a greater showing of intent or wrong doing than "simple negligence” or plain carelessness. The Code’s requirement that an officer be "without fault or misconduct” can be construed as precluding coverage only where the officer willfully engaged in conduct which entailed an unnecessary risk such as deliberately violating a safety rule or otherwise acting recklessly. Thus, we disagree with the majority that the case may be decided by simply invoking the shibboleth of "plain meaning”, for the meaning of the word "fault” in the context here, is not plain.
Even if the meaning of the word "fault” could be regarded as plain, there would be an even more compelling reason for rejecting the majority’s construction: it produces a result which is anomalous and grossly unfair (see, McKinney’s Cons *1003 Laws of NY, Book 1, Statutes §§ 145, 146, 148). As the rule is stated, in the oft quoted words of Chief Judge Breitel:
" 'There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole” this Court has followed that purpose, rather than the literal words’ ” (New York State Bankers Assn, v Al-bright, 38 NY2d 430, 437 [quoting United States v American Trucking Assns., 310 US 534, 543]).
Because, in our view, section 12-127 (b) as now interpreted is not in accord with the legislative will and could lead to highly unfair results, it should receive appropriate legislative attention.
Even adopting the majority’s stringent construction of "fault” as including any negligence, no matter how slight, substantial evidence does not support the City’s finding that petitioner was contributorily negligent. The only evidence in support of it was petitioner’s supervisor’s report. Concededly, petitioner was on duty when she slipped and fell on a puddle of water on the bathroom floor in the female officer’s locker room. Another police officer witnessed the fall and confirmed petitioner’s account of the incident. Later that same day, the supervisor investigated the incident and concluded that petitioner "failed to perceive the risk in treading on a[n] obviously wet floor. Her disregard for basic rules of safety represents negligence on her behalf’. Although the supervisor recommended disapproval of the line-of-duty designation, he did not witness the incident and the sole basis for his conclusion was the conceded fact that petitioner slipped and fell in a puddle. There was no evidence of petitioner’s lack of care and nothing to support the conclusion that the floor was "obviously wet” or that petitioner "disregard[ed] basic rules of safety”. The supervisor’s conclusion that petitioner was negligent was necessar *1004 ily a speculation on his part and amounts to a finding based on a presumption of negligence from the mere happening of the incident. Accordingly, no rational basis existed for the City’s determination.
The results of two other line-of-duty applications from police officers who injured themselves under virtually identical circumstances when they slipped and fell on wet bathroom floors confirm the irrationality of the result here. In conclusory reports written after investigation of these injuries, the supervisors recommended, and the City later adopted, line-of-duty designations. The contradiction between these cases and this case illustrates the obvious difficulty in applying the majority’s interpretation of the Code fairly and the inevitability of arbitrary and inconsistent results when a showing of even the slightest negligence can lead to a rejection.
Acting Chief Judge Simons and Judges Kaye, Bellacosa and Smith concur; Judges Titone and Hancock, Jr., dissent and vote to reverse in a joint opinion.
Order affirmed, with costs, in a memorandum.